## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

In Re:  Scott L. Fenstermaker, Esq.                    Docket Number 2:23-cv-00174 (JDL)

## RESPONDENT SCOTT L. FENSTERMAKER, ESQ.'S MEMORANDUM OF LAW IN SUPPORT OF HIS APPLICATION TO VACATE THIS COURT'S MARCH 21, 2023 INTERIM SUSPENSION

### Background

Respondent is a lawyer admitted to practice in New York and Maine.  He was admitted to practice in New York in February of 1993 and has a thirty-year unblemished disciplinary record as a New York lawyer.  He was admitted to practice in Maine on or about May 24, 2022 and was made a member of the Maine Commission on Indigent Legal Service's ("MCILS") panel of attorneys authorized to take appointments in Maine's state criminal justice system to represent indigent Mainers facing jail time for alleged criminal conduct on or about May 26, 2022.

In August of 2022, Respondent notified the District Attorney for Maine's Prosecutorial District VII of his intention to file a Federal civil rights lawsuit involving one of his Maine state criminal cases pending in Hancock County.  *See* August 2, 2022 e-mail from Respondent to ADA Carly Reger, attached hereto as Exhibit A.  Shortly thereafter, the District Attorney for Prosecutorial District VII had Respondent arrested in Washington County for allegedly trying to steal his own client's car from an alleged impound lot and assaulting the alleged impound owner by repeatedly hitting him with his automobile.  *See* Criminal Complaint, attached hereto as Exhibit B.

The District Attorney-initiated arrest and the charges against Respondent led to a state-created conflict of interest between Respondent and his Washington and Hancock County

1

clients.  Respondent therefore dutifully withdrew from his criminal matters in those two counties.  Realizing that Respondent's arrest was driven, in part, by the District Attorney's effort to neutralize Respondent's advocacy, many of Respondent's former Washington and Hancock County clients moved to dismiss their cases based upon a claim that their due process and right to counsel rights were violated by the District Attorney's transparent interference with their right to have Respondent represent them.[1]

On November 1, 2022, Justin Andrus, the state-employed bureaucrat responsible for keeping MCILS-approved attorneys in line in order to ensure the efficient facilitation of Maine's expedient and constitutionally-suspect criminal justice system, suspended Respondent from representing indigent Mainers while being paid by the State.  A copy of Mr. Andrus' November 1, 2022 e-mail informing Respondent of his suspension is attached hereto as Exhibit C.  Mr. Andrus took the inexplicable step if not only informing Respondent of his suspension, but also ordered him to withdraw from all of his cases.

Respondent ignored Mr. Andrus' clearly illegal and politically-motivated effort to deny his clients of his services by agreeing to represent most of them on a continuing basis *pro bono*, an effort that neither Mr. Andrus, nor his allies in Prosecutorial District VII, appreciated. The prosecutors, realizing that their efforts to sidetrack Respondent through Respondent's arrest and MCILS's corrupt suspension effort, reevaluated their strategy and took a more direct approach to sideline Respondent from Maine's criminal justice system.  On or about December 15, 2022, prosecutors from Prosecutorial District VII filed a motion seeking an injunction

---

[1] Among the plethora of allegations brought by the Board against Respondent is an allegation that he filed these motions to dismiss in an effort to assist his own defense, rather than that of his clients.  The Board's allegations fail to explain how a motion to dismiss a client's case harms the client.  Respondent neither signed nor filed any of these motions.

forbidding Defendant Jeff Witham from hiring Respondent as his attorney of record.[2]  A copy of Prosecutorial District VII's motion for an injunction is attached hereto as Exhibit D.

On or about December 27, 2022, Toff Toffolon, the Deputy District Attorney of Prosecutorial District VII, filed the disciplinary complaint that led to the instant suspension.  Mr. Toffolon's disciplinary complaint, which is Exhibit A to the Board of Overseer's of the Bar's (the "Board's") confidential affidavit of assistant bar counsel that was filed to secure Respondent's state court suspension, recants a lengthy list of supposed transgressions in which Respondent allegedly engaged.

On January 5, 2023 and January 6, 2023, Mr. Toffolon filed motions in the matters of *State v. Herbert Adams*, WASCD-CR-00203 and *State v. Richard Larsen, III*, WASCD-CR-2021-00149, 150, 151, 152, 153, and 154 seeking to disqualify Respondent in Messrs. Adams' and Larsen's cases.  A copy of the State's motion in Mr. Adams' case is attached as Exhibit E hereto.  The prosecutors filed a similar motion in each of Mr. Larsen's six cases.  Subsequently, prosecutors expanded their application to include seeking a blanket prohibition against Respondent representing *any* defendant in either Hancock or Washington Counties.

Respondent filed a Federal civil rights lawsuit on January 31, 2023, alleging various violations of Mr. John Keenan's ("Mr. Keenan") federal and state constitutional rights, as well as related state-law causes of action (the "Keenan Matter").  *See* 23 cv 00050 (NT).  Approximately three weeks later, the Sullivan town manager and the head of the Sullivan board of selectmen resigned.  Shortly thereafter, on or about February 9, 2023, Respondent filed a Federal class action suit on behalf of representative plaintiffs Jennifer Coates, Jennifer Hunt, and Michael

---

[2] Prosecutors in Prosecutorial District VII apparently similarly filed a motion to disqualify Respondent as counsel to Adrienna West in HANCD-CR-2020-00235.  Respondent does not have a copy of this motion.

Christopher King.  *See Coates, et. al. v. Maine Secretary of State, et. al*., 23 cv 00062 (JDL) (the "Coates Matter").  The Coates Matter was brought pursuant to 42 U.S.C. §1983 and 18 U.S.C. §1964, the Civil RICO statute, as well as related state-law causes of action.

## The Record

Because of the haphazard and slipshod manner in which this matter has been handled to date, it is unclear what constitutes the record in this case with respect to the record in the state court.[3]  Due to the uncertainty of the record in this matter regarding the extent of the record in the state case for Local Rule 83.3(c)(6) purposes, Respondent will assume that the record consists of the two state disciplinary complaints (the "Toffolon Complaint" and the "Rucci Complaint") against Respondent and docket entry number two in this matter, which is the Board's motion for a protective order in state court.

### The Toffolon Complaint

The Toffolon Complaint consists of Mr. Toffolon's written submission and a number of unnumbered exhibits.  Mr. Toffolon's complaint lists (1) criminal complaint, (2) Respondent's motion for a change of venue, (3) court order on motion to dismiss, (4) court order on motion to disqualify, (5) e-mail from jail administrator, (6) motion to withdraw, (7) Respondent's e-mail to two state prosecutors, (8) Mr. Toffolon's e-mail to Bar Counsel, and (9) Respondent's e-mail, as its attachments, which are unnumbered.  Mr. Toffolon also made supporting allegations in narrative form regarding Respondent's statements to people in the Machias courthouse, claimed that Respondent failed to notify successor counsel when filing motions, falsely claimed that he was arrested, Respondent's suspension by MCILS, and Respondent's alleged criminal activity as

---

[3] *See* Local Rule 83.3(c)(6).

evidence of Respondent's unfitness to serve as a Maine attorney. Respondent will address each of Mr. Toffolon's allegations in turn.

## Criminal Complaint and Investigatory Materials

The state court record does not justify Respondent's interim suspension with respect to the allegations of criminal conduct allegedly committed by Respondent. Respondent's arrest was a politically-motivated scheme orchestrated by the District Attorney for Prosecutorial District VII to engineer his removal as counsel of record from a number of cases in Washington and Hancock Counties. At the time of Respondent's arrest, he was investigating criminal conduct involving a private business establishment, the Washington County Sheriff's office, and members of the District Attorney's office's legal staff. The allegations against Respondent are, on their face, absurd and ludicrous.

As an initial matter, Respondent is alleged to have attempted to steal an automobile. The automobile that Respondent was alleged to have attempted to steal is his own client's automobile and he was there, with his client, attempting to secure its return. Respondent is also alleged to have hit the owner of the facility where the car was held multiple times with Respondent's own automobile. Had Respondent hit anyone with his car multiple times, then that person would have been severely injured. No injuries were reported. Finally, Respondent is alleged to have trespassed at a commercial business establishment by refusing to leave when the owners of the commercial business establishment have admitted, in writing, that they blocked Respondent from leaving. How someone can be accused of a crime by refusing to leave an area where the alleged victims have acknowledged that they blocked the alleged perpetrator from leaving is unclear. This allegation is, therefore, absurd.

### Motion for a Change of Venue

Mr. Toffolon alleges that Respondent filed a motion for a change of venue wherein Respondent allegedly accused a sitting judge of committing criminal activity. This claim is clearly false. A careful review of the motion for a change of venue makes clear that Respondent said that the judge in question, David Mitchell, "may also be involved in the criminal activity as well." This is not a claim that Judge Mitchell was involved in criminal activity, but a statement that Judge Mitchell *may* have been involved in criminal activity. This is an undeniable truth. It is also undeniably true that Judge Mitchell may not have been involved in criminal activity. Judge Mitchell recused himself from Respondent's criminal case because of a conflict of interest. *See* Judge Mitchell's recusal order, Exhibit F hereto. Because of Judge Mitchell's recusal order's broad and vague statement, it is clear that one of the possible conflicts of interest that Judge Mitchell may have is that he is involved in the very same criminal conduct that Respondent was investigating when he was arrested. There is absolutely nothing wrong with Respondent stating an absolute truth that Judge Mitchell may have been involved in criminal conduct.

### Orders on Motion to Dismiss

In support of the Toffolon Complaint, Mr. Toffolon submits Judge Mitchell's November 9, 2022 order on Herbert Adams' motion to dismiss his case. Mr. Toffolon is understandably careful to omit Mr. Adams' actual motion to dismiss, and for good reason. Mr. Adams' motion to dismiss was signed by Mr. Adams and there is no evidence, of any nature, that Respondent had anything to do with its submission. Here, the Board seeks to hold Respondent responsible for a motion to dismiss of which there is neither indication nor evidence that Respondent was involved with its filing. In addition, Judge Mitchell's conclusion that the

motion to dismiss served Respondent's interests, rather than Mr. Adams', is also false.  Mr. Adams' argument was that the state was involved in his attorney's arrest and that involvement interfered with his relationship with his counsel because of the necessity that counsel withdraw as a result of the arrest.  Judge Mitchell found that the request for an evidentiary hearing surrounding the prosecutors' involvement served Respondent's interest, rather than Mr. Adams'.  This is clearly false.  Judge Mitchell entered this finding in order to justify his refusal to hold an evidentiary hearing surrounding Respondent's politically-motivated arrest, which was, itself, effected to spare the District Attorney the embarrassment of disclosure of their suspect involvement in Respondent's arrest.

Similarly, in the matter of *State v. Adrianna West*, HANCD-CR-2020-00235, the Board claims that Respondent filed motions after his withdrawal, but provides no evidence that he withdrew.  The record in the *West* matter will show that Respondent never withdrew from Ms. West's matter and was never informed that the Court, *sua sponte*, vacated his appointment. Respondent can hardly be blamed for filing a motion in a case where he (1) never moved to withdraw, and (2) was never notified that his appointment was vacated.

Mr. Toffolon also submitted a decision from the Supreme Judicial Court in the matter of a Petition of Tyunique Pounds, SJC-22-12.  It is unclear what misconduct Respondent is alleged to have committed in Mr. Pounds' matter.  Mr. Pounds' application was for a writ of mandamus directing the court in Washington County to decide a bail modification motion.  In ruling on this matter, the Supreme Judicial Court implied, without holding, that Respondent did not have permission to file the application.  Setting aside, for the moment, the Supreme Judicial Court's implication, there is no evidence of any nature that Respondent did not have Mr. Pounds' permission to file the petition for a writ of mandamus and it is inconceivable why the court

would even think that Mr. Pounds would have any such objection, as the sole purpose of the petition was to obtain an order directing Judge Mitchell to rule on Mr. Pounds' bail modification application, which had been sitting for many weeks without resolution.

### E-mail from Jail Administrator Rolfe

Mr. Toffolon presents an e-mail from the administrator of the Washington County Jail, claiming that Respondent attempted to visit clients that he no longer represented. This is a non-issue. At the time, Respondent was securing conflict waivers from clients in an effort to represent them on a *pro bono* basis. Indeed, the two clients in question, Messrs. Richard Larsen and Herbert Adams, both subsequently executed conflict waivers in favor of Respondent. Those conflict waivers are attached hereto as Exhibits G and H.

### Filing in PENCD-CR-2022-02270

The Board submits a motion to withdraw that Respondent filed in *State v. Lawrence Camillo*, PENCD-CR-2022-02270. The Board's apparent concern here is that Respondent asserted that attorney Jeffrey Toothaker was appointed as Respondent's co-counsel over Respondent's and the Defendant's objection and Respondent objected by asserting that Mr. Toothaker was appointed to "muzzle" Respondent. Respondent is well within his rights to object to Mr. Toothaker's appointment and call it for what it was. Mr. Toothaker was appointed at the request of Assistant Attorney General Jason Horn and over the objection of Respondent and Mr. Camillo. He was, in fact, appointed to muzzle Respondent and his advocacy for Mr. Camillo. Here, Respondent did nothing wrong and had every right to point out the underlying reason for Mr. Toothaker's illegal and corrupt appointment.

**Respondent's E-mail Regarding ADA Heather Staples' Criminal Conduct**

Mr. Toffolon includes an e-mail that Respondent sent to ADA Heather Staples, in which Respondent warns ADA Staples that Respondent had a reason to believe that ADA Staples had engaged in wrongdoing regarding tampering with electronic evidence and that Respondent intended to make a referral to the United States Attorney regarding her misconduct. Here, as with the motion to withdraw in Mr. Camillo's case, there is nothing wrong with this. ADA Staples was, in fact, involved in tampering with a recording made from a home security system. The recording, which was in the sole possession of the state, would exonerate a defendant by the name of Jeff Witham, who is detained at the Hancock County Jail. ADA Staples was in the process of having that evidence altered to eliminate Mr. Witham's ability to use it to exculpate himself. ADA Staples is currently facing disciplinary charges as a result of her conduct in this regard and for the fact that she sent an Ellsworth Police Department Detective to speak with Mr. Witham in the Hancock County Jail without first clearing the interview with Mr. Witham's MCILS-approved counsel. Respondent sent that message not as Mr. Witham's attorney, but as a member of the bar and a member of the public. He had every legal and ethical right to send it and did absolutely nothing wrong in doing so.

**Mr. Toffolon's E-mail to Bar Counsel**

Mr. Toffolon included an e-mail that he sent to Bar Counsel Julia Sheridan, which included an e-mail from ADA Staples to Ms. Sheridan. It is unclear why Mr. Toffolon included this e-mail. In ADA Staples' e-mail, she made a number of claims to Bar Counsel, including a claim that Respondent committed a felony of Obstructing a Criminal Prosecution. This claim, and the other claims brought in ADA Staples' e-mail, is silly. An attorney does not obstruct a criminal prosecution when he meets with a defendant facing criminal charges and provides that

defendant with advice.  Any suggestion to the contrary is not only incorrect, but is shocking.  It is clear that the prosecutors in Prosecutorial District VII simply want to be able to control the attorneys who represent defendants in their district and make scandalous and frivolous allegations to further that controlling behavior.  This, they cannot do.

### Respondent's December 18, 2022 E-mail

Mr. Toffolon similarly included a December 18, 2022 e-mail from Respondent to ADAs Delwyn Webster and Heather Staples.  He stated that "neither court appointed attorney has withdrawn."  While this statement may be correct, it neglects to mention the fact that Respondent had filed entries of appearance in both matters.  Copies of those entries of appearance, dated well before December 18, 2022, are attached hereto as Exhibits I and J.

### Claims About a "Recent Arraignment Day"

Mr. Toffolon next mentions a "recent arraignment day" in which he claims that Respondent spoke with defendants present that day.  He mentions statements that Respondent allegedly made to the defendants and the fact that Respondent allegedly offered "free consultation."  It is clear that, even if these allegations are true, Respondent did nothing wrong.  Respondent has a right to speak with whomever he likes about matters of public interest.  Mr. Toffolon does not assert that any of the defendants had counsel.  Furthermore, it can hardly be disputed that if Mr. Toffolon's assertions are correct, everything that Respondent said to the defendants was true.  Finally, while the disciplinary rules may prohibit solicitation of "employment" by an attorney, offering a free consultation without entering into a retention agreement, unhindered by the propaganda that MCILS attorneys spew in order to protect Maine's corrupt criminal justice system and their own income streams, is entirely permissible.

**Mr. Toffolon's Allegations of Respondent's Failure to Notify Successor Counsel**

Mr. Toffolon makes note of his claim that Respondent did not notify successor counsel of his having filed motions on behalf of defendants after he had withdrawn.  As described above, Respondent never filed motions on behalf of a defendant after he had withdrawn.  Each motion in question was filed by the defendant in the case on a *pro se* basis.  In the one case that Mr. Toffolon mentions where Respondent did file a motion, he had not, in fact, withdrawn.  While Respondent may have been relieved in that case before he filed a motion, Respondent was never notified of his having been relieved and therefore filed the motion having every reason to believe that he was the defendant's attorney of record.

**Mr. Toffolon's Claim that Respondent was not Arrested**

Mr. Toffolon concludes that Respondent claims to have been arrested, when he was not.  As an initial matter, Respondent was clearly arrested.  If he wasn't arrested by the Washington County Sheriff's office, then he was arrested by the proprietor of the location where he was arrested, as the proprietor himself acknowledged blocking Respondent from leaving the location.[4]  As a result, the proprietor either (1) arrested the Respondent, or (2) committed a crime by unlawfully detaining Respondent.  In addition, the Washington County Sheriff's office detained Respondent and his client at the location for between 80 and 90 minutes after the police arrived.  If this does not qualify as an arrest, then it is difficult to determine what might qualify as an arrest.  Finally, even if the Court determines that Respondent was not arrested, is this cause to suspend Respondent from practicing law for an indefinite period, end his law practice, eliminate his clients and seize his bank accounts, under these circumstances?  Hardly.

---

[4] *See* 17-A M.R.S. §16(2) (authorizing private person to arrest a suspect for certain Class D and Class E crimes).

**Mark Rucci's Allegations**

Bar Counsel included a complaint made by ADA Mark Rucci of the District Attorney's office for Prosecutorial District VII.  Mr. Rucci essentially claims that Respondent verbally berated him after Mr. Rucci contacted the police about whom Respondent had, moments before, made allegations of police misconduct.  Earlier that day, Respondent had asked to speak with Mr. Rucci and his supervisor, Chris Almy, who is the District Attorney for Prosecutorial District VII.  The reason for Respondent's request was that the police in Dexter, Maine had apparently taken property during a search warrant execution for which they failed to account.  Respondent, and his client, were concerned about the whereabouts of that missing property.  When Respondent asked Mr. Rucci for this meeting, Mr. Rucci refused stating "No, I'm just going to call the cops."

After Mr. Rucci refused to schedule a meeting with Respondent to discuss the potential police misconduct and informed Respondent that he intended to contact the very police about whom Respondent had just made a complaint, Respondent disengaged with Mr. Rucci and went back into the courtroom.  When the matter was called before the judge, Respondent asked the Court to direct Mr. Rucci to not contact the police regarding the misconduct allegations and Mr. Rucci proudly announced that he had already done so.  Respondent was, understandably, mortified.

After the close of the business day, Respondent did speak with Mr. Rucci as they both left the courthouse.  Respondent did say some of the things that are alleged that he said.  He did not say all of the things that were alleged.

12

**Board's Motion for a Protective Order**

The Board filed, as document number 2 herein, a state court motion for protective order, Respondent's response to the Board's motion, and the state court's decision on the motion. This motion does not add anything to the matters before this Court, although Respondent's response does clarify the political nature of the proceedings below. Respondent's suspension was imposed in order to keep him from making waves in Maine's corrupt state criminal justice system. Plain and simple, it is illegal, improper, and should be vacated without any further delay.

**Respondent's Federal Court Filings**

Respondent filed the Keenan Matter on January 31, 2023. Shortly thereafter, on or about February 9, 2023, Respondent filed the Coates Matter. The Keenan Matter and the Coates Matter are both politically-related matters with potential ramifications for Maine's state government and local governments throughout the State of Maine. The Coates Matter has potential political ramifications for Maine Governor Janet Mills and the Maine Attorney General Aaron Frey. The Coates Matter alleges wrongdoing in the executive branch of the Maine state government, as well as wrongdoing that falls under the law enforcement arm of the Maine Attorney General. Governor Mills, in addition to being the Governor, was, upon information and belief, the former Maine Attorney General. In addition, Attorney General Frey has direct responsibility for enforcing laws that were implicated in the Coates matter and his office's failures were directly referenced in the Coates Matter's complaint. *See* Coates Matter Complaint, Page 26, Footnote 3.

Because of the politically-sensitive nature of the Coates Matter and the alleged involvement of Maine executive branch officials, local governments, and law enforcement

personnel, state actors have incentive to sideline the Coates Matter (and the Keenan Matter as well). Upon information and belief, the Coates Matter implicates the administrative title transfer of approximately 6,500 motor vehicles statewide every year, valued at approximately $20 million. This scheme is operated on a statewide basis and arguably consists of the commission of numerous state and federal crimes by both government agents and private parties. If the allegations contained in the Coates Matter are proven to be true, and the extent of the problem is as vast as Respondent's preliminary investigation indicates, both Governor Mills and Attorney General Frey will likely be called upon to answer for why such a scheme was permitted to exist under their (1) supervision, and (2) watch.

### Further Federal Court Actions Requested by Maine State Criminal Defendants

Maine state court criminal defendants Dexter Bray, Jr., Justin Bulley, Jennifer Coates, David Cooper, Andrae Dixon, Lisa Gould, Jennifer Hunt, John Keenan, Heather King, Richard Larsen, III, Philip McIntyre, Melissa Melton, Douglas Noble, Jr., Richard Peavey, Tyunique Pounds, Adrien Sanders, Lucas Socobasin, Naim Stewart, Bradley Thompson, and Jeff Witham have all requested that Respondent file Federal court actions on their behalf pursuant to 42 U.S.C. §1983 and 28 U.S.C. §§2241(c)(3) challenging their illegal treatment at the hand of the Maine state government. These potential claims arose because of the Maine state courts' corrupt refusal to recognize Respondent's entries of appearance in their cases, the potential for the Maine state courts' granting Prosecutorial District VII's motions to disqualify Respondent as their counsel, and Respondent's state suspension. These potential clients were seeking redress under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution on due process and right-to-counsel grounds. Respondent's Federal Court suspension effectively ends his ability to brings claims on behalf of these 20 potential clients.

14

**Effect of Respondent's Federal Court Suspension on the Keenan Matter and the Coates Matter**

The effect of Respondent's suspension is that the Keenan Matter and the Coates Matter will almost certainly both be dismissed.  No attorney is going to touch those matters after Respondent's treatment.  The political and retaliatory nature of Respondent's suspension from the Maine state bar make it impossible to find new attorneys for the Coates Matter and the Keenan Matter.  The timing of the conduct underlying most of the allegations against Respondent makes it clear that the underlying conduct is not the impetus for Respondent's suspension.  Respondent was arrested on September 28, 2022.  The motions of which the Board claims Respondent filed improperly were all filed in either October or November of 2022.  *All* of Respondent's conduct that is complained of, with the exception of the incident with Mr. Rucci, occurred in 2022.  Notwithstanding these facts, the Board waited until March 16, 2023 to file its *ex parte*, emergency application for Respondent's interim suspension.  If Respondent's actions were as problematic as the Board would have this Court believe, it is difficult to understand why the Board waited six months after Respondent was arrested and four and one-half months after Respondent allegedly filed the allegedly improper motions to act.  In short, Respondent's alleged misconduct is a mere pretext for the Board's effort to sideline an aggressive, effective, and highly competent attorney from representing Plaintiffs with legitimate claims.  This is a flagrant abuse of the disciplinary system and should not be countenanced, particularly when this abuse of the Maine disciplinary process is being perpetrated to frustrate this Court's jurisdiction in the Kennan Matter, the Coates Matter and the potential *habeas* petitions.

In short, the Board's act in securing Respondent's suspension was motivated by powerful Maine-based political interests in a coordinated effort to silence Respondent's advocacy.  For this reason, the exception provided for in this Court's Local Rule 83.3(c)(6)(C)

applies and this Court should immediately vacate its suspension order.  Local Rule 83.3(6)(C) reads as follows:  "that the imposition of the same discipline or the making of the same finding by this Court would result in grave injustice."  Here, Respondent's state court suspension rests on misleading, incomplete, and at times, wholly inaccurate information.  Respondent's state court suspension was imposed in bad faith.  Furthermore, Respondent's Federal court suspension affects the viability of the Keenan Matter and the Coates Matter, as it is entirely unlikely that any attorney will touch those matters with a ten-foot pole.  In addition, as described above, Respondent has 20 potential clients who want him to file Federal *habeas* petitions challenging state wrongdoing in the dilatory and inadequate manner in which they are being treated in their state court matters.  As a result, suspending Respondent from the Federal Court Bar constitutes a grave injustice, not to Respondent, but to Respondent's clients.

### State Courts' Refusal to Accept Respondents' Entries of Appearance[5]

When Respondent's former indigent clients began asking him to represent them in their matters, Respondent filed entries of appearance in some, but not all, of their cases.  In a number of those cases, the Maine Courts refused to acknowledge Respondent's engagement to represent those clients.  This happened with Richard Larsen,[6] Herbert Adams,[7] Robert Sears,[8] Adriana West,[9] and John Keenan.[10]  As a result of these refusals, the Maine Courts had

---

[5] Entries of Appearance are, in Maine Courts' parlance, what Respondent knows more commonly as Notices of Appearance.  They are the means by which an attorney notifies a court that he or she is that litigant's attorney for that matter.

[6] WASCD-CR-2021-00149, 150, 151, 152, 153, and 154.

[7] WASCD-CR-2022-00203.

[8] HANCD-CR-2022-00926.  In Mr. Sears' matter, Respondent filed an Entry of Appearance on or about December 9, 2022.  On or about December 21, 2022, the State Court took a felony guilty plea from Mr. Sears through MCILS-appointed counsel without notifying Respondent.  Mr. Sears' December 21st guilty plea was his first felony conviction.

[9] HANCD-CR-2020-00235.

[10] HANCD-CR-2022-00217.

effectively eliminated these defendants' rights to counsel of their choice without notice or a hearing. *See* United States Constitution, Amendments VI and XIV; *see also* Maine Constitution, Article I, Section 6; *see also United States v. Gonzalez-Lopez*, 548 U.S. 140 (2006); *see also State v. Ayers*, 464 A.2d 963, 966-67 (1983); *see also State v. Dunbar*, 2008 ME 182, Pages 6 and 7, 960 A.2d 1173 (2008). As a matter of course, the Maine Courts see it as their prerogative to decide who will be a criminal defendant's attorney, even when the defendant has the wherewithal to hire counsel or where counsel is willing to represent the defendant on a *pro bono* basis.

### Inadequacies of the State Court Record

Local Rule 83.3(c)(6) requires this Court to rely on the state court record in making its reciprocal disciplinary measure determination. For the following reasons, this Court should permit an expansion of the State court record to permit reevaluation of Respondent's interim suspension in this court.

### Respondent's Arrest

Respondent was allegedly arrested for (1) trespassing at a location where the complainants themselves admitted to blocking Respondent's ability to leave the location, (2) assaulting the proprietor by hitting him numerous times with Respondent's automobile, and (3) attempting to steal Respondent's client's own car while accompanied by the very client who owned the car. Respondent should be able to supplement the state court record by obtaining an affidavit from his client detailing the falsity of the allegations and demonstrating that the incident that led to Respondent's arrest does not warrant suspending Respondent from the bar of this Court.

**Motions to Dismiss**

With respect to the motions to dismiss about which the Board complains, the state court record should be expanded by requiring the Board to submit (1) the motions in question and (2) any proof that the Board has that Respondent filed those motions. Respondent did not sign any of those motions. Respondent did not file any of those motions. To suspend Respondent because of the filing of motions which he neither signed nor filed would constitute a grave injustice and would similarly call into question the sufficiency of the evidence with respect to this allegation.

The Board should be required to produce every motion that it claims was improperly filed, evidence of who filed the motion, and a description of how filing a motion to dismiss harms a defendant. While Judge Mitchell's decisions on these motions call into question Respondent's motives for filing the motions, he provides no proof that Respondent filed the motions and noticeably failed to justify his refusal to order an evidentiary hearing regarding the District Attorney's involvement in Respondent's arrest. Judge Mitchell's decision simply assumed that the District Attorney was not involved in Respondent's suspension or that the involvement was benign and made in good faith. Either way, Judge Mitchell's assumption was not supported by any evidence and his unwillingness to permit the gathering of evidence regarding the District Attorney's involvement demonstrates a distinct bias in favor of the state.

**Order on State's Motion to Disqualify**

The Court should permit the expansion of the record with respect to the Court's Order in the state's motion to disqualify Respondent from Adrianna West's case. As an initial matter, the Court, in its decision, claims that Respondent moved to withdraw from Ms. West's matter. This is false. Respondent never sought to withdraw from Ms. West's case. The Court's holding

to the contrary is clearly erroneous. Respondent should be permitted to expand the record to show that he never moved to withdraw in Ms. West's matter.

Second, the Court claims that Respondent filed motions in Ms. West's matter after he had been relieved as counsel of record. This may, or may not, be factually accurate. Nonetheless, Respondent had not been notified that his assignment had been vacated when he filed the motions in question. Hence, Respondent cannot be faulted for filing motions in a matter where he had every reason to believe that he was still counsel of record. Hence, the record should be expanded with any evidence, of which there will be none, that Respondent was alerted that his appointment in Ms. West's matter had been vacated when he filed the motions in question.

### Order from Supreme Judicial Court

It is unclear why Mr. Toffolon submitted the Order from the Supreme Judicial Court, but the only possible relevance of this document is whether the defendant, Tyunique Pounds, authorized Respondent to file the petition for mandamus. This Court should permit the expansion of the record to permit Mr. Pounds to submit an affidavit regarding whether he authorized this filing.[11]

### E-mail Accusing ADA Heather Staples of Criminal Conduct

This Court should permit the expansion of the record to determine whether ADA Heather Staples either tampered with evidence or attempted to tamper with evidence in Jeff

---

[11] It should be noted that, at present, there is a state court order forbidding Respondent from communicating with Mr. Pounds. Hence, Respondent would have a difficult time obtaining the affidavit from Mr. Pounds.

Witham's matter.[12]  In addition, it should be pointed out that even if Respondent was incorrect in his assessment of ADA Staples' conduct, he committed no disciplinary infraction if he reasonably believed she did.  Respondent has a right under both the United States and Maine Constitutions to make his voice heard to public officials, of which ADA Staples is one.

### December 18, 2022 E-mail

Mr. Toffolon includes the December 18, 2022 e-mail presumably to demonstrate that Respondent was communicating with prosecutors regarding cases where he was not the attorney of record.  The record should be expanded to indicate whether Respondent had filed entries of appearance in these matters.[13]

### Consequences to the Federal Court System Should Respondent's Federal Court Suspension Be Continued

Permitting Respondent's Federal court suspension to be continued has potentially grave consequences for the independence of the Federal court system and claimants' ability to access the Federal courts in seek of redress.  Here, every allegation brought by the Board against Respondent has to do with his efforts to either uncover or push back against state and local wrongdoing.  The Federal court system has historically been the forum in which such matters have been brought.  Section 1983 of Title 42 of the United States Code and the Fourteenth Amendment to the United States Constitution were both enacted for just this purpose.  Allowing state actors to weaponize the disciplinary process to eviscerate Section 1983, the Fourteenth

---

[12] ADA Staples is currently facing a disciplinary complaint regarding her alleged tampering and the fact that she sent an Ellsworth Police Department Detective to speak with Mr. Witham while he was incarcerated and represented by counsel.

[13] Copies of Respondent's entries of appearance in these two matters are attached hereto as Exhibits I and J.

Amendment, and Federal question subject matter jurisdiction[14] would provide a platform for state actors to abuse in furtherance of avoiding accountability, as has been done here.

It is easy to rationalize what is happening here, particularly where the judge who is reviewing this application at this stage was, for many years, part of the very problem evidenced by Respondent's state bar suspension.  However, the Federal courts play a special role in protecting the rights for which this country allegedly stands.  Had the Federal courts in the South permitted this type of nonsense during the 1950s and 1960s, our country might be in a much different place right now.

It would be easy for the Court to continue to disingenuously hide behind the procedural limitation provided for in Local Rule 83.3(c)(6) and impose identical discipline. However, in this case, the state court discipline was imposed for the purpose of avoiding, evading, and eviscerating Federal law.  It was imposed illegally and in bad faith.  This Court has no lawful choice but to ignore Respondent's state court suspension, vacate Respondent's Federal court suspension, and permit Respondent to continue to pursue his clients' federal rights in the pending matters and the coming *habeas* petitions.

## Conclusion

For the foregoing reasons, this Court should vacate Respondent's Federal court suspension and, in the alternative, permit the expansion of the state court record for the reasons stated above.

---

[14] 28 U.S.C. §1331.

Dated: Ellsworth, Maine
       May 2, 2023

                                   Respectfully submitted,

                                   /s/ Scott L. Fenstermaker
                                   Scott L. Fenstermaker
                                   P.O. Box 887
                                   Ellsworth, Maine 04605
                                   207-812-4340
                                   scott@fenstermakerlaw.com

To:    Clerk of the Court
        United States District Court
        156 Federal Street
        Portland, Maine 04101

        Audrey B. Braccio, Esq.
        Assistant Bar Counsel
        97 Winthrop Street
        P.O. Box 527
        Augusta, Maine 04332-0527