## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

In Re: Scott L. Fenstermaker, Esq. )
)
)        **Civil No. 2:23-cv-00174-JDL**
)
)

### ORDER

On March 17, 2023, a single Justice of the Maine Supreme Judicial Court ("SJC") suspended Attorney Scott L. Fenstermaker from the practice of law in Maine on an interim basis (No. 2:23-mc-00106-JDL, ECF No. 1-1).  Pursuant to Local Rule 83.3(c)(2), I immediately suspended Fenstermaker from the practice of law in this Court and ordered him to show cause as to why this identical discipline should not be imposed (No. 2:23-mc-00106-JDL, ECF No. 1).  After a case management conference and with the leave of the Court, Fenstermaker filed a Memorandum in Opposition to the suspension (No. 2:23-cv-00174-JDL, ECF No. 3), as well as a Motion for Recusal, which argues that I should recuse myself from presiding over this matter (No. 2:23-cv-00174-JDL, ECF No. 4).

For the following reasons, I conclude that Fenstermaker has failed to show that identical discipline should not be imposed and I deny his Motion for Recusal.

### I.  BACKGROUND

#### A.    State Court Proceedings

On March 16, 2023, the Maine Board of Overseers of the Bar ("the Board") filed with the SJC an *ex parte* petition to immediately suspend Fenstermaker from the practice of law in Maine on an interim basis.  The petition was supported by an

affidavit from Assistant Bar Counsel Suzanne E. Thompson, which described two Bar Complaints that had been made against Fenstermaker and the factual basis for those complaints.[1]

The first Bar Complaint was made by Deputy District Attorney Toff Toffolon, of the State of Maine's Prosecutorial District VII.  The Toffolon Bar Complaint and attached documents assert, among other things, that (1) Fenstermaker was charged by criminal complaint with committing multiple misdemeanor offenses stemming from his alleged altercation with the owner of a towing business which had possession of a car owned by one of Fenstermaker's clients; (2) in court filings, including in his own criminal case, and communications with government attorneys, Fenstermaker repeatedly alleged, without factual support, that Maine prosecutorial officers and a Maine state court judge are engaged in criminal conduct and are part of a conspiracy; (3) Fenstermaker made improper filings in his former clients' criminal cases after he had withdrawn from his representation of the clients; (4) in his former clients' cases, Fenstermaker sought relief that would be favorable to himself in the criminal prosecution against him; (5) Fenstermaker continued to visit the Washington County Jail to meet with inmates despite the fact that he was no longer representing any clients in the Jail; (6) Fenstermaker alleged that the appointment of co-counsel in some of his cases was done to "muzzle" his own advocacy; and (7) at an arraignment session in Machias, Fenstermaker told the assembled members of the public that they

---

[1] On March 17, 2023, Justice Thomas R. McKeon, sitting as a single Justice of the SJC by designation, issued an order impounding the Bar Counsel Affidavit and attached exhibits.  The Board sought a protective order that would protect the exhibits to the Bar Counsel Affidavit from public disclosure, a request that Fenstermaker opposed.  On April 13, 2023, Justice McKeon granted in part and denied in part the Board's request.  Specifically, Justice McKeon ordered that some information in the exhibits be redacted, but otherwise permitted them to be publicly disclosed.

2

should not trust the District Attorney's Office, which was engaged in a conspiracy, and he offered free consultation even though he was not the assigned "lawyer of the day."

The second Bar Complaint was made by Assistant District Attorney Mark A. Rucci, who alleges that Fenstermaker angrily confronted him at the Penobscot Judicial Center. The confrontation was in response to Rucci having informed the Dexter Police Department of an allegation made by Fenstermaker that the Police Department had stolen firearms that were owned by one of Fenstermaker's clients. According to Rucci, Fenstermaker screamed and cursed while following Rucci in the courthouse, causing Rucci to "[w]onder whether Attorney Fenstermaker would hit [him]." Rucci's account was supported by written statements from two Judicial Marshals who had been present during the incident and reported that it seemed as if Fenstermaker would assault Rucci.

Based upon the Assistant Bar Counsel's affidavit and attached exhibits, Justice Thomas R. McKeon, sitting as a single Justice of the SJC by designation, concluded that Fenstermaker's conduct violated, at the least, Maine Rules of Professional Conduct 8.4(a), (b), and (d), and that Fenstermaker's "misconduct serves as an imminent threat to clients, the public and to the administration of justice." Justice McKeon thus ordered Attorney Fenstermaker "suspended from the practice of law in Maine, until further Order of th[e] Court." He also appointed Attorney Barry Mills to serve as the receiver of Fenstermaker's law practice.

The Board subsequently filed a Motion to Enforce in response to Fenstermaker's alleged failure to provide all of the necessary information and

property to the receiver.  Justice McKeon held a hearing and then issued an Order
that granted in part and denied in part the Motion to Enforce.  The Order provided
in relevant part that Fenstermaker "has no current intent to file a motion to dissolve
the interim order of suspension."

## B.   Proceedings in this Court

In response to the discipline imposed by Justice McKeon, on March 21, 2023, I
issued an Order to Show Cause pursuant to Local Rule 83.3(c)(2), which suspended
Fenstermaker from the practice of law in this Court effective immediately and
required Fenstermaker to show cause as to why such discipline should not be imposed
(No. 2:23-mc-00106-JDL, ECF No. 1).  Fenstermaker filed a response that, among
other things, described a pair of federal cases that he was litigating and argued that
identical discipline should not be imposed based on the factors provided in Local Rule
83.3(c)(6) (No. 2:23-mc-00106-JDL, ECF No. 2).  On April 19, 2023, I issued an Order
appointing Audrey Braccio, Assistant Bar Counsel, as special counsel in this matter,
but otherwise took no action on Fenstermaker's first response (No. 2:23-mc-00106-
JDL, ECF No. 3).[2]

On May 2, 2023, Fenstermaker, pursuant to my April 19 Order, filed a second
memorandum of law arguing that the suspension previously imposed by this Court

---

[2]  I also ordered that the records that this Court received from the SJC be sealed (No. 2:23-mc-00106-
JDL, ECF No. 3).  In light of Justice McKeon's Order granting in part and denying in part the Board's
request for a protective order, *see supra* n.1, it is ordered that the records, as ordered redacted by
Justice McKeon, are hereby unsealed.  At this juncture, though, the Court's records contain only the
original versions of Exhibits A and B to the Bar Counsel Affidavit—not versions that incorporate the
redactions ordered by Justice McKeon.  Accordingly, the copies of Exhibits A and B to the Bar Counsel
Affidavit currently in this Court's possession will remain sealed, and Assistant Bar Counsel Braccio is
directed to file on the docket a new version of the SJC records containing the redacted documents.
This filing will be filed and received not under seal and will be publicly available on the docket record.

should be vacated (No. 2:23-cv-00174-JDL, ECF No. 3).  The Board filed a response in support of the suspension previously imposed (No. 2:23-cv-00174-JDL, ECF No. 6). Additionally, Fenstermaker filed a Motion for Recusal seeking my recusal from this case (No. 2:23-cv-00174-JDL, ECF No. 4), which the Board opposes (No. 2:23-cv-00174-JDL, ECF No. 5).

## II.  LEGAL ANALYSIS

### A.  Fenstermaker's Suspension

#### 1.  The Parties' Arguments

Fenstermaker makes several arguments as to why identical discipline should not be imposed in his case.   First, Fenstermaker walks through each of the attachments to the Toffolon Bar Complaint and explains why, in his view, they do not support a conclusion that he committed misconduct warranting suspension; and with respect to the Rucci Bar Complaint, Fenstermaker argues that he did not say everything alleged by Rucci and that suspension is not the proper discipline for his alleged conduct.  Second, Fenstermaker argues that it would be a grave injustice if he was suspended from the practice of law because his clients in two civil rights cases filed in this Court, the *Coates* matter and the *Keenan* matter,[3] would be deprived of his representation and that other attorneys would be unlikely to take those cases. Fenstermaker contends that, among other things, he was targeted and suspended in state court for bringing these civil rights claims against officers of the State of Maine and that the timing of his suspension supports this conclusion.  Third, Fenstermaker

---

[3] Specifically, these cases are *Coates v. Maine Secretary of State*, 1:23-cv-00062-JDL, and *Keenan v. Town of Sullivan*, 1:23-cv-00050-NT.

argues that the state court proceedings that gave rise to his interim suspension, which were conducted on an *ex parte* basis, deprived him of due process. Finally, Fenstermaker also argues that a number of state criminal defendants are prejudiced because they can no longer retain him to bring federal actions in which they would assert that Maine state courts violated the criminal defendants' right to counsel by refusing "to acknowledge [Fenstermaker's] engagement to represent those clients." No. 2:23-cv-00174-JDL, ECF No. 3 at 17.

### 2. Local Rule 83.3(c)

Under Local Rule 83.3(c)(2), when this Court receives a certified copy of a judgment demonstrating that an attorney admitted to the bar of this Court has been disbarred or suspended by another United States jurisdiction, this Court may, in its discretion, enter an order immediately suspending that attorney from practice. If the Court issues such a suspension, it must issue "an order to show cause directing that the attorney inform this Court . . . of any claim by the attorney predicated upon the grounds set forth in Subsection (c)(6) hereof that the imposition of the identical discipline . . . by the Court would be unwarranted and the reasons therefor." D. Me. Loc. R. 83.3(c)(2)(C). The Rule provides that identical discipline shall be imposed unless "the respondent-attorney demonstrates, or this Court finds, that the record in the other jurisdiction clearly shows" one of four circumstances. D. Me. Loc. R. 83.3(c)(6). These four circumstances are (1) "that the procedure was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process;" (2) "that there was such an infirmity of proof establishing the misconduct . . . as to give rise to the clear conviction that this Court could not, consistent with its duty, accept

as final the conclusion on that subject;" (3) "that the imposition of the same discipline or the making of the same finding by this Court would result in grave injustice;" and (4) "that the conduct at issue is deemed by this Court to warrant substantially different action." D. Me. Loc. R. 83.3(c)(6)(A)-(D). If any of these circumstances are present, the Court "shall enter such other order as it deems appropriate." D. Me. Loc. R. 83.3(c)(6).

The respondent-attorney "bears the burden to demonstrate 'by clear and convincing evidence . . . that the imposition of substantially similar discipline is unwarranted.'" *In re Burbank*, 790 F. App'x 226, 228 (1st Cir. 2019) (per curiam) (alteration in original) (quoting *In re Barach*, 540 F.3d 82, 85 (1st Cir. 2008) (per curiam)).[4] And given the limited nature of the Court's inquiry, "the norm will be for this court to impose discipline which is substantially similar to that imposed by the state court." *Id.* (quoting *In re Williams*, 398 F.3d 116, 119 (1st Cir. 2005) (per curiam)). Therefore, "the state court's substantive findings ordinarily are entitled to a high degree of respect when this court is asked to impose reciprocal discipline," *In re Williams*, 398 F.3d at 118, and an attorney faces an "uphill climb" in showing that reciprocal discipline should not be imposed, *see In re Barach*, 540 F.3d at 85.

For the reasons that follow, I conclude that Fenstermaker has not shown that any of the conditions in Local Rule 83.3(c)(6) are met. I address each in turn.

---

[4] Although *Burbank*, *Barach*, and most of the other cases discussed in this section arise under the First Circuit's analog to Local Rule 83.3(c)(6) rather than the Local Rule itself, the cases are nonetheless instructive about the principles to be applied in reciprocal discipline cases governed by Local Rule 83.3(c)(6).

### (a) Due Process

To the extent that Fenstermaker's due process argument is properly before me,[5] he has not shown "that the procedure [in the state court] was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process." D. Me. Loc. R. 83.3(c)(6)(A). Due process is inherently a flexible concept, *see In re Barach*, 540 F.3d at 85-86, and in the context of attorney discipline cases, "due process concerns are limited to 'want of notice or opportunity to be heard.'" *In re Williams*, 398 F.3d at 120 (quoting *Selling v. Radford*, 243 U.S. 46, 51 (1917)); *see also In re Barach*, 540 F.3d at 85 (noting that due process is satisfied "if a state adopts procedures that collectively ensure the fundamental fairness of the disciplinary proceedings").

Here, although Fenstermaker was suspended on an interim basis after an *ex parte* petition from the Board, the Maine Bar Rules specifically provide an opportunity for attorneys to be heard in such circumstances by filing a motion for dissolution of the interim suspension. *See* Me. Bar R. 24(d). Fenstermaker, though, chose not to file such a motion or challenge his interim suspension by the SJC. His decision not to pursue the process available to him under state law precludes him from showing that the process in the state court was "lacking in notice or opportunity to be heard." D. Me. Loc. R. 83.3(c)(6)(A). Moreover, there is nothing in the record to indicate that the process by which the SJC imposes interim suspensions, which is governed by Maine Bar Rule 24, violates due process. Thus, Fenstermaker's due process argument fails. *See In re Williams*, 398 F.3d at 120 ("The respondent has

---

[5] Fenstermaker developed this issue only in his Reply Brief (ECF No. 11). *See Small v. Colvin*, No. 2:14-cv-00042-NT, 2015 WL 860856, at *6 n.6 (D. Me. Feb. 27, 2015) (observing that an issue raised for the first time in a Reply Brief may be deemed waived).

proffered no credible evidence that the notice actually given was inappropriate or that the state court did not afford him a constitutionally sufficient opportunity to be heard. Thus, his due process claim fails."); *In re Burbank*, 790 F. App'x at 230 ("Indeed, the SJC provided sufficient notice to Burbank of the allegations against him, time to respond, and, ultimately, a testimonial hearing before imposing a suspension from practice.").

### (b)  Infirmity of Proof

Fenstermaker argues that although the state court record is replete with *allegations* that he committed misconduct, there is no actual *proof* of such misconduct, so there is an "infirmity of proof" under Local Rule 83.3(c)(6)(B).  Under this element, the Court will consider whether, based on the state court record, it is left with a "clear conviction" that it could not, consistent with its duty, accept as final the state court's conclusion on the subject of misconduct.  *See* D. Me. Loc. R. 83.3(c)(6)(B); *In re Suárez-Jiménez*, 666 F. App'x 2, 5 (1st Cir. 2016) (per curiam).

Here, the information in the SJC record supporting the finding of Fenstermaker's professional misconduct is substantial.  The Bar Counsel Affidavit, Toffolon Bar Complaint, Rucci Bar Complaint, and the accompanying exhibits show, among other things, that (1) Fenstermaker was charged with multiple misdemeanor offenses arising out of an alleged altercation involving his effort to take possession of a client's car; (2) Fenstermaker made, in the words of the Bar Counsel Affidavit, "meritless allegations that courts, prosecutors, and [the Maine Commission on Indigent Legal Services] were part of a conspiracy to deprive criminal defendants of their constitutional right to counsel" and that Maine officials were involved in

criminal activity; (3) Fenstermaker sought to represent former clients after he had withdrawn from representation and, in some instances, to make his own alleged criminal conduct an issue in his former clients' cases in a manner that would primarily benefit his own interests; and (4) Fenstermaker angrily confronted another attorney over a disagreement and put both the attorney and surrounding marshals in fear that he would assault the attorney.   Taken as a whole, the information contained in the record provides solid support for Justice McKeon's finding that Fenstermaker violated, at the least, Maine Rules of Professional Conduct 8.4(a), (b), and (d).

Although Fenstermaker takes issue with some of the assertions made in the Bar Complaints and exhibits, Local Rule 83.3(c)(6) does not permit a respondent to relitigate issues that could have been raised in the underlying disciplinary proceeding.  *See Burbank*, 790 F. App'x at 229; *In re Suárez-Jiménez*, 666 F. App'x at 5.  Contrary to Fenstermaker's argument, the record does not evince an infirmity of proof.  And as previously noted, Fenstermaker had the right to be heard on the interim suspension imposed by the SJC and chose not to avail himself of that opportunity.

### (c) Grave Injustice

Fenstermaker argues that the imposition of the same discipline that the SJC imposed would result in a "grave injustice" to his former clients, who are actively litigating the *Coates* and *Keenan* civil rights cases in this Court.  *See* D. Me. Loc. R. 83.3(c)(6)(C).  According to Fenstermaker, the *Coates* and *Keenan* cases "will almost certainly both be dismissed" because "[n]o attorney is going to touch those matters

after [Fenstermaker's] treatment," which he contends was retaliatory.  No. 2:23-cv-00174-JDL, ECF No. 3 at 15.  Fenstermaker further argues that permitting retaliation by "powerful Maine-based political interests in a coordinated effort to silence [his] advocacy" would be a grave injustice.  No. 2:23-cv-00174-JDL, ECF No. 3 at 15.  Fenstermaker also notes that it would prejudice a number of potential clients who want to retain him to file federal habeas petitions on their behalf.

Although Fenstermaker's suspension may inconvenience his former clients and cause some degree of hardship to them in the *Coates* and *Keenan* cases, Fenstermaker's assertion that "[n]o attorney is going to touch those matters after [Fenstermaker's] treatment," No. 2:23-cv-00174-JDL, ECF No. 3 at 15, is no more than mere speculation.[6]  Moreover, the potential prejudice to existing clients from having an attorney suspended is present in most, if not every, case in which an attorney is suspended from practice.  In the same vein, although criminal defendants who wish to retain Fenstermaker to challenge the alleged denial of their right to counsel by the Maine state courts are now compelled to seek alternative representation, that circumstance does not render the imposition of an identical suspension on Fenstermaker a grave injustice.

Finally, contrary to Fenstermaker's argument that this case is unique because he was intentionally suspended to prevent him from litigating the *Keenan* and *Coates* cases, Fenstermaker has failed to show that the SJC suspension was imposed for that reason.  Fenstermaker asserts that the timing of the Board's petition requesting his suspension, which was submitted after the *Keenan* and *Coates* cases had been filed

---

[6] This Order expresses no opinion as to the merits or viability of the *Keenan* and *Coates* matters.

in federal court, gives rise to an inference of retaliation.  However, the timeline of events fully supports the conclusion that the interim suspension was imposed for reasons unrelated to the *Keenan* and *Coates* cases.

The Toffolon Bar Complaint, which details Fenstermaker's conduct in 2022, was filed on December 22, 2022—before the *Keenan* and *Coates* complaints were filed in federal court on January 31, 2023, and February 9, 2023, respectively.  The Rucci Bar Complaint was filed afterwards, on February 22, 2023.  The petition seeking Fenstermaker's suspension and the accompanying Bar Counsel Affidavit—which rely on both the Toffolon and Rucci Bar Complaints—were filed not long after, during the week of March 15, 2023.  This timeline, which includes Bar Complaints submitted both prior and subsequent to the filing of the *Keenan* and *Coates* complaints, undercuts Fenstermaker's argument that the petition seeking his interim suspension was filed in retaliation for his advocacy in those cases.  Moreover, the substantial factual support submitted in connection with the petition in support of Fenstermaker's suspension further belies Fenstermaker's claim of improper retaliation.

### (d) Other Reasons Not to Impose Identical Discipline

Finally, I am not persuaded by Fenstermaker's insistence that the particular circumstances of this case support deviating from the discipline imposed by the SJC. Despite the conclusory bombast employed by Fenstermaker in his written submissions with this Court accusing state officials of wrongdoing, those submissions fail to lay out a credible foundation from which wrongdoing might be found.  Rather, the SJC record shows substantial proof that Fenstermaker was suspended on an

interim basis for his own misconduct, and there is no compelling reason to deviate from the suspension imposed by the SJC.

For the preceding reasons, Fenstermaker has failed to show that identical discipline should not be imposed.[7]  Therefore, my initial suspension of Fenstermaker will remain in effect.[8]

## B.    Motion for Recusal

I am also unpersuaded by Fenstermaker's argument that I am required to recuse from this case under 28 U.S.C.A. § 455(a) and (b)(1) (West 2023). Fenstermaker argues that because he challenges the State of Maine's allegedly unlawful practices in the *Keenan* and *Coates* cases, my prior service as a Judge in the Maine state court system—which Fenstermaker characterizes as "fetid and corrupt", a "cesspool," and "implicat[ed]" in the *Keenan* and *Coates* matters—creates the appearance of partiality requiring my recusal.[9]  No. 2:23-cv-00174-JDL, ECF No. 4-1

---

[7]  Fenstermaker also argues that the Court should expand the record to include a number of documents that were not before the SJC.  However, under the terms of Local Rule 83.3(c)(6), my review is limited to "the record in the other jurisdiction."  *See also In re Williams*, 398 F.3d at 119 (noting that in reciprocal discipline cases, the "court will undertake an 'intrinsic consideration of the state record'" (quoting *Selling*, 243 U.S. at 51)).  Thus, I decline Fenstermaker's request to expand the record and instead limit my review to the materials that were before the SJC.  Moreover, as noted above, the materials currently in the record provide an adequate basis for concluding that Fenstermaker engaged in misconduct, so there is no need to expand the record in any event.

[8]  I reject as unpersuasive all of Fenstermaker's arguments about his suspension that are not expressly addressed in this Order, and I conclude that those additional arguments do not merit further discussion.

[9]  Specifically, Fenstermaker makes the following argument:

The district court judge in this matter rose to his present position because of his ability to finesse and massage Maine's fetid and corrupt state judicial system with political aplomb.  The district judge served as a Maine district court judge for approximately six or seven years and then served on Maine's Supreme Judicial Court for twelve years. Maine's Supreme Judicial Court serves as the ringleader of Maine's fetid and corrupt state court system and Chief Judge Levy's lengthy service on this tribunal makes him subject to reputational attack, should the nature of Maine's corrupt court system be

13

at 2.  Fenstermaker also argues that due to my prior state judicial service, I am "almost certainly personally acquainted with Governor [Janet] Mills and Attorney General [Aaron] Frey," whose conduct is also implicated in Fenstermaker's civil rights lawsuits.  No. 2:23-cv-00174-JDL, ECF No. 4-1 at 2.

Section 455(a) of Title 28 provides that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."  The statute further provides that judges shall disqualify themselves when, among other things, they have "a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding."  *Id.* § 455(b)(1).  "The statute 'forbids not only the reality of partiality but its objective appearance as well.'"  *United States v. Pulido*, 566 F.3d 52, 62 (1st Cir. 2009) (quoting *United States v. Snyder*, 235 F.3d 42, 45 (1st Cir. 2000)); *see also Snyder*, 235 F.3d at 45 ("As the Supreme Court has pithily characterized [section 455]: 'Quite simply and quite universally, recusal [i]s required whenever "impartiality might reasonably be questioned."'" (second alteration in original) (quoting *Liteky v United States*, 510 U.S. 540, 548 (1994))).

But the recusal standard is an objective one, and it "does not mean that required recusal can be based on an 'unsupported, irrational, or highly tenuous speculation.'"  *In re Martinez-Catala*, 129 F.3d 213, 220 (1st Cir. 1997) (quoting *In re*

---

brought to light.  He was, in short, neck deep in Maine's corrupt state court system and apparently politically flourished in that fetid system, to the point that he was elevated to the Federal bench.  Because Respondent's state court suspension was orchestrated to protect Maine's cesspool of a state court system, and the district court judge was a successful operator in that very cesspool, the appearance of partiality is great.

No. 2:23-cv-00174-JDL, ECF No. 4-1 at 4.

*United States*, 666 F.2d 690, 694 (1st Cir. 1981)).  Similarly, "section 455 does not require recusal 'on the basis of remote, contingent, indirect[,] or speculative interests.'" *United States v. Gottesfeld*, 18 F.4th 1, 17 (1st Cir. 2021) (quoting *United States v. Bayless*, 201 F.3d 116, 127 (2d Cir. 2000)).  Instead, recusal requires "that there be no reasonable question, in any informed person's mind, as to the impartiality of the judge." *In re United States*, 441 F.3d 44, 68 (1st Cir. 2006).  Furthermore, judges are not to lightly recuse themselves under section 455.  *Snyder*, 235 F.3d at 45.  This is because unwarranted recusals may be prejudicial and because "the unnecessary transfer of a case from one judge to another is inherently inefficient and delays the administration of justice." *Id.* at 46.  Thus, "[a] trial judge must hear cases unless [there is] some reasonable factual basis to doubt the impartiality or fairness of the tribunal." *Id.* (alterations in original) (quoting *Blizard v. Frechette*, 601 F.2d 1217, 1221 (1st Cir. 1979)).

In this case, recusal is not warranted because no "reasonable question" about my impartiality is suggested by Fenstermaker's contentions and the invective he employs to describe Maine's state courts.  *In re United States*, 441 F.3d at 68; *Snyder*, 235 F.3d at 45.  Fenstermaker's assertions about my earlier service as a Maine state judge are precisely the kind of "unsupported, irrational, or highly tenuous speculation" that does not give rise to a duty to recuse.  *In re Martinez-Catala*, 129 F.3d at 220 (quoting *In re United States*, 666 F.2d at 694).  Leaving aside the fact that Fenstermaker's reasoning would apparently require *anyone* who had served as a judge in the Maine state court system to recuse from this matter, Fenstermaker has not alleged any facts that provide a reasonable basis to question my partiality.

Fenstermaker also asserts: "Because of Chief Judge Levy's lengthy service in the fetid and corrupt Maine court system, he is almost certainly personally acquainted with Governor Mills and Attorney General Frey." No. 2:23-cv-00174-JDL, ECF No. 4-1 at 2.   A judge's social acquaintances and affiliations, including any affiliations with government leaders, is not, without more, grounds for recusal.   *See In re Martinez-Catala*, 129 F.3d at 221 (concluding that a judge's former political affiliation was not a basis for mandatory recusal); *In re United States*, 666 F.2d at 696-97 (concluding that a judge was not required to recuse despite the fact that the defendant in that case had, in his political career, treated an associate of the judge favorably); *United States v. Sampson*, 148 F. Supp. 3d 75, 113-14 & nn.33-34 (D. Mass. 2015) (concluding that a judge's acquaintance with a witness was not a sufficient basis for mandatory recusal); *see also United States v. Angelus*, 258 F. App'x 840, 842 (6th Cir. 2007) (concluding that a professional acquaintance with government officials was insufficient to warrant mandatory recusal).

Fenstermaker has raised no reason grounded in fact or law to warrant my recusal in this case.   Under these circumstances, his request is frivolous, as is his request that he be permitted to conduct discovery regarding "any and all communications between the district court judge and any other individual, including other members of this Court, after Respondent filed the Keenan Matter on January 31, 2023 regarding Respondent in any manner." No. 2:23-cv-00174-JDL, ECF No. 4-1 at 4.   *See Nickerson-Malpher v. Worley*, 560 F. Supp. 2d 75, 77, 82 (D. Me. 2008) (denying a frivolous motion for recusal and warning the moving party against further frivolous filings); *see also In re Martinez-Catala*, 129 F.3d at 220 (observing that

although a party seeking the recusal of a judge may seek discovery, "the allowance of such discovery is within the sound discretion of the court").

### III.  CONCLUSION

For the foregoing reasons, it is **ORDERED** that Fenstermaker's suspension shall remain in effect as set forth in my Order dated March 21, 2023 (No. 2:23-mc-00106-JDL, ECF No. 1), and his Motion to Recuse (No. 2:23-cv-00174-JDL, ECF No. 4) is **DENIED**.

**SO ORDERED.**

**Dated:  June 16, 2023**

_____ **/s/ JON D. LEVY** _____
**CHIEF U.S. DISTRICT JUDGE**